# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Stephen Henry, et al., | No. CV-18-03058-PHX-DJH |
| Plaintiffs, | **ORDER** |
| v. | |
| City of Somerton, et al., | |
| Defendants. | |

Pending before the Court are two motions for summary judgment submitted by both Plaintiffs and Defendants. Plaintiffs seek partial summary judgment on one of their First Amendment claims (Doc. 83), and Defendants seek summary judgment on all of Plaintiffs' claims (Doc. 91). Each motion is fully briefed.[1] On May 27, 2021, the Court heard oral argument on the motions. The Court now issues its Order.

## I. Background[2]

In the fall of 2016, Plaintiff Stephen Henry rented a space along West Main Street in the Defendant City of Somerton (the "City"), a small town in the southwestern corner of Arizona. (Doc. 56 at ¶ 35). In the rental space, Mr. Henry intended to start a church, the Iglesia Bautista de Somerton (the "Iglesia"). (*Id.* at ¶ 36). The Iglesia is also a Plaintiff

---

[1] Defendants filed a Response to Plaintiffs' Motion (Doc. 89), and Plaintiffs filed a Reply (Doc. 92). Likewise, Plaintiffs filed a Response to Defendants' Motion (Doc. 112), and Defendants filed a Reply (Doc. 108). The Court also requested additional briefing on the issue of justiciability. Plaintiffs filed a supplemental brief (Doc. 96) as did Defendants (Doc. 100).

[2] The facts here are undisputed except as to the nature of Mr. Henry's electrical work, which the Court notes below.

in this action.

Because of its location along Main Street, the Iglesia was legally obligated by the City's zoning ordinance ("Ordinance") to obtain a Conditional Use Permit ("CUP") before opening. (Doc. 112-2 at 6). All entities classified by the Ordinance as "conditional use" were required to obtain a CUP. (*Id.*) This included religious assemblies, schools, and day cares, among others. (*Id.*) At least eleven entities along Main Street have obtained CUPs, three of which are churches. (Docs. 83 at 5; 102-2 at 11). Other uses, such as fraternal organizations and social clubs, were "permitted uses" and did not need a CUP under the Ordinance. (Doc. 112-2 at 6).

There was a time, before 2008, when the Ordinance prohibited "Churches and places of worship" on Main Street, along with gas stations, car dealerships, and manufactured homes. (Doc. 83-2 at 4). Religious assemblies were moved to the conditional use category in 2015, during what Defendants call an "overhaul" of the Ordinance. (Doc. 91 at 8). This overhauled Ordinance required users whose "traffic arrived or left at a predictable time" to apply for a CUP to operate along Main Street. (Docs. 91 at 6; 91-2 at 1).

Before he had leased it to Mr. Henry, the rental space's landlord, Ramon Arias, knew a church in his property would need a CUP. He asked Defendant Carmen Juarez, the City's Community Development Director, whether the City would approve a CUP application. (Doc. 112-3 at 81). Ms. Juarez, he says, thought the City would not want a church in that space because the City instead wanted to help open a sports bar in another nearby building. (*Id.*) In late 2016, the City was considering requests for a "restaurant/sports bar" on Main Street. (Doc. 112-3 at 12). But why a church's presence would preclude a sports bar from opening nearby, and where this notion originated, is not made clear in the record. In fact, at that time there was no legal obstacle to such an arrangement. *See* A.R.S. §§ 4-205.02; 4-207(A). Nevertheless, Mr. Arias says Ms. Juarez told him the City would use the CUP process to block Mr. Henry's from putting a church in the rental space. (Doc. 112-3 at 81).

Mr. Arias told Mr. Henry the City intended to deny him any CUP. (*Id.*) But when Mr. Henry asked the City's Manager, Bill Lee, whether the City would oppose the church, Mr. Lee said the City had no problem with Mr. Henry opening a church. (Doc. 56 at ¶ 33). And so, despite the apparent warnings from Ms. Juarez, Mr. Henry entered into a three-year lease of the space with Mr. Arias. (*Id.* at ¶ 35).

Mr. Henry did not apply for a CUP. Instead, he forged ahead with his plans to open the Iglesia, which included doing some work on the building's lights. This work's exact nature is disputed. Mr. Henry casts it as "minor electrical repair," the kind that anyone can do without a permit. (*Id.* at ¶ 42). But to Defendant Salvador Lopez, the City Building Inspector, the work was serious enough that it required a permit. (*Id.* at ¶ 39).

On October 27, 2016, Mr. Lopez went to inspect the building at Ms. Juarez's direction. (Doc. 112-4 at 59). According to Mr. Lopez, he walked into the building to find wires on the floor and Mr. Henry up on a ladder, rewiring a lamp. (Doc. 89-6 at 14). Despite Mr. Henry's protests, Mr. Lopez issued a Stop Work Order for performing unauthorized electrical repairs. (Doc. 56 at ¶ 44).

Soon after being told to stop work, Mr. Henry and Mr. Arias went to talk with Ms. Juarez. (*Id.* at ¶ 47). She told them that the Iglesia needed the electrical permits, and that these permits would not issue unless the Iglesia had obtained a CUP. (*Id.* at ¶¶ 47–48). She handed them the CUP application. (*Id.* at ¶¶ 47, 75).

The next day, October 28, 2016, Mr. Henry sent a letter to the city arguing "that his repair work in the building did not require a permit . . . and . . . he did not plan on completing the CUP application because the City Ordinance conflicted with Arizona and Federal laws protecting the free exercise of religion." (*Id.* at ¶ 51; Doc. 83-6 at 18–19). The City responded on October 31 and said Mr. Henry needed a permit to continue the electrical work and that he would be in violation of the City's Ordinance if he opened the Iglesia without a CUP. (Docs. 56 at ¶ 54; 83-6 at 24–25). Despite these admonitions, Mr. Henry opened the Iglesia on November 6 and held public services. (Doc. 56 at ¶ 56). He held services again on November 9. (*Id.*) Nothing in the record indicates that the Iglesia has

ever been stopped from holding services, and all indications suggest it has been operating uninterrupted since that time.

What followed after the opening were several legal proceedings, including this one.

**a. Registrar of Contractors Complaint**

First, on November 12, 2016, the Arizona Registrar of Contractors notified Mr. Henry that Mr. Lopez had filed a complaint for the unpermitted electrical work he had done in the Iglesia. (Doc. 56 at ¶ 57). In December, the Registrar of Contractors sent Mr. Henry a letter demanding that he obtain an electrical permit and the CUP. (*Id.* at ¶ 68). The Registrar of Contractor's Administrative Law Judge ("ALJ") eventually found that the work did indeed require a permit, but the ALJ dismissed the case on jurisdictional grounds. (Doc. 89-10 at 7–8).

**b. Criminal Prosecution**

On November 21, 2016, the City sent Mr. Henry a letter stating that the City was preparing a criminal citation against him for violating the Ordinance unless he obtained a CUP and the appropriate work permits. (Doc. 56 at ¶ 61). Again, Mr. Henry declined to obtain the necessary permits. (*Id.* at ¶ 69). Then the Somerton Police Department called Mr. Henry saying they intended to issue a criminal citation for his failure to obtain the necessary permits. (*Id.* at ¶ 70).

Two separate criminal citations were then issued. First, on January 3, 2017, Mr. Henry was cited and released "for three class 1 misdemeanors, all pertaining to his work in the church building without the permit demanded from the City." (*Id.* at ¶ 71; *see* Doc. 83-6 at 40–42). Second, on January 23, 2017, Mr. Henry was criminally cited in for operating the Iglesia without a CUP. (Docs. 56 at ¶ 72; 100-27 at 2–3).

**c. Department of Justice Involvement & Dismissal of Citation for Operating Without a CUP**

As the legal proceedings against Mr. Henry carried on, the Department of Justice started to examine the Ordinance. (Doc. 56 at ¶¶ 84, 87). In February 2017, the Department of Justice notified the City that it had initiated an investigation into the

Ordinance to determine whether it violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Doc. 112-5 at 2). In response, on July 28, 2017, the City dismissed the second misdemeanor citation against Mr. Henry for failing to obtain a CUP. (Doc. 56 at ¶ 84). However, the City continued to prosecute its class 1 misdemeanors related to Mr. Henry's unpermitted electrical work. (*Id.* at ¶ 85).

### d. Arizona Attorney General Involvement & Amendment of the Ordinance

In August 2017, the Arizona Attorney General's office wrote a letter to Ms. Juarez, advising her that the Ordinance appeared to violate Arizona's Free Exercise of Religion Act ("FERA"). (Doc. 83-7 at 10). The Arizona Attorney General's office wanted to "encourage the City" to amend its Ordinance. (*Id.*) In September 2017, the City did just that. Specifically, it removed the requirement that religious assemblies obtain a CUP to operate along Main Street. (Doc. 56 at ¶ 89; 83-7 at 14–15). Once the amendment took effect, religious assemblies, including the Iglesia, no longer need a CUP. (Doc. 100 at 7).[3]

### e. Dismissal of Remaining Criminal Charges Regarding Electrical Permitting

On November 7, 2017, the remaining criminal charges related to the electrical permitting were dismissed against Mr. Henry "because the City's actions and procedures in issuing the [Stop Work Order] provided no notice to Mr. Henry and the City failed to provide its own mandated appeal process . . . ." (Doc. 56 at ¶ 94).

### f. The Present Action

Plaintiffs filed this action on September 27, 2018. (Doc. 1). The First Amended Complaint ("FAC") brings seven claims. The First Claim is a FERA claim against the City. (Doc. 56 at ¶¶ 104–17). The Second Claim, brought against all Defendants, is brought under 42 U.S.C. § 1983 for violating Plaintiffs' First Amendment right to free exercise of religion. (*Id.* at ¶¶ 118–34). The Third and Fourth Claims against all Defendants are for malicious prosecution, brought under federal and state law, respectively. (*Id.* at ¶¶ 135–61). The Fifth Claim is a § 1983 claim against all Defendants alleging that the City's Zoning Code constitutes a prior restraint on religious exercise in

---

[3] The record does not make clear how this amended Ordinance influenced Mr. Henry's need for the electrical permits, or whether he ever applied for them.

violation of the First Amendment. (*Id.* at ¶¶ 162–69). The Sixth and Seventh Claims allege federal and state equal protection violations, respectively. (*Id.* at ¶¶ 170–87). The only explicit relief Plaintiffs seek is an award of damages, both compensatory and punitive, as well as an award of attorney fees and costs. (*Id.* at 30).

## II.    Summary Judgment Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). When facts are undisputed, the Court may then resolve the legal questions. *See* Fed. R. Civ. P. 56(a); *N. Cal. River Watch v. Wilcox*, 633 F.3d 766, 772 (9th Cir. 2011).

The Court will begin its analysis with Plaintiffs' Motion, and then it will evaluate Defendants' Motion.

### III.    Plaintiffs' Motion for Summary Judgment

Plaintiffs' Motion only seeks summary judgment on Claim Five, which claims that the City's Ordinance contains language that constitutes a prior restraint on their First Amendment rights.  (Doc. 83 at 2).  They argue the Ordinance's process for evaluating CUPs granted City officials unlimited discretion, creating an unconstitutional prior restraint.  (*Id.*)  The specific language claimed to constitute a prior restraint was present in the Ordinance before the City amended it in 2017, and it remains there today.  (Doc. 83-4 at 2).  It lists the "Required Findings" that the City's Planning Commission must make in order to approve a CUP.  (*Id.*)

It is well established in the record that Plaintiffs have never attempted to apply for a CUP,  and no party disputes that Plaintiffs no longer need one.  (Doc. 37 at 8).  Therefore, the Planning Commission never actually went through the process of evaluating the Iglesia's CUP application, which Plaintiffs claim is unconstitutional.  The Court will note that if it granted Plaintiffs' explicitly requested relief of damages, the allegedly unconstitutional evaluation process would remain as an operative part the Ordinance.  These circumstances raise the specter of justiciability.  Therefore, the Court will first assess its own jurisdiction over this matter, as it must.  *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999).

A federal court's jurisdiction is limited by Article III of the Constitution to cases or controversies.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  This limit forms the foundation of the doctrine of standing, which requires a plaintiff to assert a redressable injury that is traceable to the defendant's conduct.  *Id.* at 560–61.  This injury must be concrete, actual, or imminent.  *Id.* at 560.  An alleged injury that is merely conjectural or hypothetical will not do.  *Id.*  In addition, courts must determine whether a matter is ripe for adjudication, so to avoid "judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties."  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967).  In the context of land use claims, the Ninth Circuit treats ripeness as a matter of "both Article III and prudential concern."  *Guatay*

*Christian Fellowship v. County of San Diego*, 670 F.3d 957, 980 (9th Cir. 2011).

Here, Plaintiffs allege their injury consisted of costs incurred as a result of defending the civil and criminal complaints made against them for failing to obtain either the electrical permits or a CUP, which was traceable to the enforcement of the Ordinance. (Doc. 96 at 2). As Plaintiffs say, all of Mr. Henry's injuries "are traceable to Somerton's *enforcement* of the Ordinance." (*Id.* at 3) (emphasis added).

To be clear, this enforcement injury does not and cannot arise from any evaluation of a CUP application. Plaintiffs never submitted an application. The injury arises from enforcing the requirement that religious assemblies obtain a CUP before operating. As stated in the January 2017 criminal complaint against Mr. Henry, he was prosecuted because he "opened and began operating a church . . . without having obtained a proper Conditional Use Permit . . . ." (Doc. 100-27 at 2). Because there is no injury related to the CUP evaluation process, Plaintiffs have no standing to argue against the CUP evaluation process' constitutionality. *See Guatay*, 670 F.3d 957, 981 (9th Cir. 2011) ("In other words, we cannot even begin to determine that the [City] has definitively barred the Church from using the building as it wishes until it has had the opportunity to evaluate a completed application and has determined how it will apply its land use regulations to the Church.").

Plaintiffs imply that any application for a CUP would have been futile due to the City's desire to prevent Mr. Henry's church on Main Street. (Doc. 83 at 2). It is true that if an attempt to apply for a land use permit would prove futile, parties bringing prior restraint claims need not go through the application process to have standing. *See Desert Outdoor Advert., Inc. v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996) (finding plaintiffs had standing to challenge a permit regulating signage, even though they did not apply for one, because the city had already brought an action to remove the plaintiffs' signs and because the ordinance prohibited certain signs). Importantly, for the attempt to prove futile, Ninth Circuit caselaw requires those bringing constitutional challenges to land use restrictions to try and submit "at least one meaningful application." *Herrington v. County of Sonoma*, 857 F.2d 567, 569 (9th Cir. 1988); *see also Guatay*, 670 F.3d at 982 ("Ninth

Circuit jurisprudence in this area still does not excuse permit-seekers who fall into this [futility] exception from the final decision requirement from submitting at least one complete permit application.").

In *Guatay*, the Ninth Circuit extended the final decision requirement from takings claims to RLUIPA claims. 670 F.3d at 980; *see Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). Essentially, *Guatay* held that because a church did not apply for a "Use Permit application" under its local government's zoning ordinance, the RLUIPA claim was not ripe as no final decision had been made about the application. 670 F.3d at 983. *Guatay* did leave open the question of whether, in the Ninth Circuit, the final decision requirement applies to First Amendment claims in the land use context. *Id.* at 987. However, the court did note that "[a]ll of the circuits to address this issue have applied the final decision requirement to RLUIPA claims, *as well as to related First Amendment-based § 1983 claims* when they were presented . . . ." *Id.* at 979 (emphasis added) (citing *Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347–53 (2d Cir. 2005) *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 537 (6th Cir. 2010); *Grace Cmty. Church v. Lenox Twp.*, 544 F.3d 609, 616 (6th Cir. 2008); *Congregation Anshei Roosevelt v. Planning & Zoning Bd. of the Borough of Roosevelt*, 338 Fed. Appx. 214, 217–19 (3d Cir.2009) (unpublished)).

There is, therefore, strong authority to support this Court's finding that without even having tried to apply for a CUP, any injury Plaintiffs claim that resulted from the CUP evaluation process is purely conjectural. Plaintiffs cannot claim they were deterred by the CUP evaluation process because, by all accounts, they have been conducting services uninterrupted since the Iglesia opened. Furthermore, this claim cannot ripen now because it was cut from the vine, so to speak, when the City amended its Ordinance, obviating the need for Plaintiffs to apply for a CUP. Plaintiffs cite the Supreme Court's recent decision in *Uzuegbunam v. Preczewski*, 141 S.Ct. 792 (2021), for the proposition that changing an unconstitutional policy does not moot a case when a plaintiff claims even nominal damages that resulted from the original policy. (Doc. 96 at 4). This argument assumes damages

were incurred as a result of the Ordinance's CUP evaluation process, but Plaintiffs allege none. [4]

In sum, the Court finds Plaintiffs lack standing for their prior restraint claim because they never suffered a concrete, actual, or imminent injury as a result of the CUP evaluation process. *See Lujan*, 504 U.S. at 560. Arguments about whether the CUP evaluation process is too discretionary are inapposite because Plaintiffs never suffered an injury as a result of that process. The Court, therefore, denies Plaintiffs' Motion for Summary Judgment and dismisses Claim Five.

## IV. Defendants' Motion for Summary Judgment

Defendants seek summary judgment on all of the FAC's remaining claims. They also seek summary judgment on qualified immunity and certain procedural requirements under Arizona law when suing governmental entities. (Doc. 91). The Court will begin by addressing the issue of qualified immunity.

### a. Qualified Immunity

Defendants argue Ms. Juarez and Mr. Lopez are immune from this action. Qualified immunity protects a government official's discretionary conduct from civil liability if the conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A clearly established right is one that is sufficiently clear such that a reasonable official

---

[4] In, *Kaahumanu v. Hawaii*, a minister who challenged a permit requirement to hold weddings on a beach was not required to try to apply for the permit in order to have standing. 682 F.3d 789, 796 (9th Cir. 2012). The minister alleged that his wedding planning rates had to increase because of the permitting fees and insurance requirements, and that this increase caused fewer couples to hire him. *Id.* The court noted that to have standing, the minister need only have declined to speak or modified his speech in response to the permitting system. *Id.* Nowhere in the record do Plaintiffs show how their alleged injury from the CUP evaluation process impacted the Iglesia's operation. Plaintiffs did not decline to operate the Iglesia, nor does the record show they modified the Iglesia's operations in response to the CUP evaluation process. Instead, the record shows Plaintiffs boldly and undeterred went through with their plans to operate a church in violation of the CUP and electrical permitting requirements. Moreover, although the costs associated with the civil and criminal legal actions are fairly traceable to the requirement that the Iglesia have a CUP in order to operate, these costs are not the type of speech-related injury that gives Plaintiffs standing to raise a prior restraint claim. Plaintiffs concede the Iglesia never stopped operating, and they do not argue that they had to modify their speech–here, the operation of the Iglesia–in any other way as a result of the costs Mr. Henry incurred in defending the charges.

would know their actions violate that right. *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Once a defendant raises the issue of qualified immunity, the plaintiff bears the burden of showing that the allegedly violated rights were clearly established. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). If a plaintiff carries this burden, then the defendant must prove the conduct at issue was reasonable. *Id.*

Ultimately, the court must engage in three inquiries: "(1) identification of the right that has allegedly been violated, (2) the determination of whether that right was clearly established such that a reasonable official would have known of it, and (3) the determination of whether a reasonable officer would have believed that the challenged conduct was lawful." *Id.* This is an objective inquiry, one that does not concern itself with the mental states of the actual defendants. *Harlow*, 457 U.S. at 818.

Defendants argue that both Ms. Juarez and Mr. Lopez are entitled to qualified immunity. (Doc. 91 at 14). They argue that Mr. Lopez was simply enforcing the Building Code and that Ms. Juarez should not be responsible for enforcing the Zoning Code "merely because she is the Zoning Administrator tasked with enforcing the Code." (*Id.* at 15–16). Plaintiffs argue that their rights under the Equal Protection Clause are so clearly established that both individual Defendants do not benefit from qualified immunity. (Doc. 112 at 16). "It is well established," Plaintiffs argues, "that municipalities cannot discriminate against their citizens' religious beliefs using their zoning ordinances." (*Id.*) Plaintiffs also argue that both Defendants instituted criminal and civil prosecutions to punish Mr. Henry. (*Id.* at 17).

Assuming the first two elements identified in *LSO* are met, the issue with respect to Ms. Juarez becomes whether a reasonable official in her position would have known that requiring Mr. Henry to apply for a CUP would violate his constitutional rights. *See LSO*, 205 F.3d at 1157. The Court finds that a reasonable official would not. As the Ninth Circuit has stated, "the existence of a statute or *ordinance* authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional." *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994)

(emphasis added). A reasonable official in Ms. Juarez's position knowing the Ordinance required many uses, including religious assemblies, to apply for a CUP, would not have known whether the CUP requirement violated Plaintiffs' rights.

Plaintiffs point to *Orin v. Barclay*, 272 F.3d 1207 (9th Cir. 2001), for the proposition that, as they say, "a public official may not impose restrictions upon religion that are not imposed on secular uses." (Doc. 112 at 16). But Plaintiffs stretch *Orin* too broadly. The *Orin* court recognized that there are instances where the government may limit First Amendment rights, provided the limiting action is narrowly tailored to serve a compelling government interest. 272 F.3d at 1207. It is not the case that every zoning law that specifically burdens the free exercise of religion is *per se* unconstitutional. *See San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1031 (9th Cir. 2004) (noting that if a "zoning law is not neutral or generally applicable, but is directed toward and burdens the free exercise of religion, it must meet the strict scrutiny test"). Thus, a reasonable official requiring a church to obtain a CUP, as directed to do by the City's Ordinance, would not know they might be violating a clearly established right. *See Messiah Baptist Church v. County of Jefferson, State of Colo.*, 859 F.2d 820, 826 (10th Cir. 1988) ("A church has no constitutional right to be free from reasonable zoning regulations . . . ."). Therefore, the Court finds that Ms. Juarez is entitled to qualified immunity.

For the same reason, the Court finds that Mr. Lopez is also entitled to qualified immunity. A reasonable building inspector would not have known that by issuing a Stop Work Order because of suspected unpermitted electrical work and subsequently filing a complaint with the Registrar of Contractors, he was potentially violating constitutional rights.

The Court again reminds all that this inquiry into what a reasonable officer would have known is objective. *Harlow*, 457 U.S. 818. Plaintiffs' arguments about Defendants' subjective states of mind are not pertinent to this analysis. *Id.* Therefore, because both Ms. Juarez and Mr. Lopez are entitled to qualified immunity, the Court will dismiss them and their spouses who are named in the FAC. The City is the only remaining Defendant.

### b. Notice of Claim & Statute of Limitations

Next, the Court will address Defendants' argument that the state law claims are barred by a failure to provide statutorily required notice and that other claims are time-barred. (Doc. 91 at 3). Under A.R.S. § 12-821.01(A), potential plaintiffs must file their claims against public entities within 180 days of the claim's accrual. In addition, under A.R.S. § 12-821, actions against public entities must be brought within a year of the claim's accrual.

Defendants argue the state-law claims must be dismissed because they never received adequate notice. (Doc. 91 at 4). The City argues that on May 1, 2018, it received a hand-delivered notice that was addressed to City officials. (Doc. 91 at 4). The City argues that because this notice was never *served* upon the employees or the City Councilmembers, the notice is ineffective. (*Id.*) Plaintiffs argue Defendants have waived this notice defense. (Doc. 97 at 9).

Governmental entities may waive their defense under § 12-821 when their actions are "inconsistent with the intent to assert a right." *County of La Paz v. Yakima Compost Co., Inc.*, 233 P.3d 1169, 1177 (Ariz. Ct. App. 2010). There are two reasons why the Court may reasonably infer that Defendants have waived any defense they now claim under A.R.S. § 12-821.01(A). First, Defendants did not indicate in their Motion to Dismiss that they believed the notice they received was inadequate. *See City of Phoenix v. Fields*, 201 P.3d 529, 535 (Ariz. 2009) (noting that failure to assert defense under § 12-821.01 in a motion to dismiss pursuant to Arizona Rule of Civil Procedure 12(b) is also a waiver). Second, Defendants first raised the argument that the notice of claim was deficient in its briefing on March 12, 2020. (Doc. 46 at 5). The original Complaint in this action was filed in September 2018. (Doc. 1). Defendants' delay in raising this argument shows an inconsistent intent to assert their rights under A.R.S. § 12-821.01. *See County of La Paz*, 233 P.3d at 1177. The Court finds that the Defendant have waived this right.

Defendant also argues that the FAC's First Claim, alleging FERA violations, is time barred by § 12-821. (Doc. 91 at 4). Plaintiffs argue the continuing violation doctrine allow

them to bring this claim. (Doc. 112 at 11). They argue the City elected to impose the CUP requirement on Plaintiffs until November 7, 2017, when the Municipal Court dismissed the criminal charges against Mr. Henry. (*Id.* at 12). Therefore, they argue the September 2018 Complaint was timely filed. (*Id.*) The Court will also note that the Ordinance was not amended to remove the CUP requirement for religious assemblies until late 2017, and finally took effect on November 16, 2017. (Doc. 112-5 at 7).

The Court has neither found nor been presented with any dispositive authority showing whether the continuing violation doctrine applies to FERA claims. Broadly speaking, Arizona law disfavors statute of limitations defenses, preferring instead to resolve cases on their merits. *Floyd v. Donahue*, 923 P.2d 875, 877 (Ariz. Ct. App. 1996). And in many areas of Arizona law, when an injury "is continuing in nature" the applicable statute of limitations begins to run when the injury ends. *Garcia v. Sumrall*, 121 P.2d 640, 643 (Ariz. 1942) (applying continuing violation doctrine to property law); *Floyd v. Donahue*, 923 P.2d 875, 879 (Ariz. Ct. App. 1996) (applying continuing violation doctrine to tort law).

FERA states a "person whose religious exercise is burdened . . . may assert that violation as a claim . . . ." A.R.S. § 41-1493.01(D). It can certainly be said that the City "burdened" Plaintiff by imposing its CUP requirement on them, right up until the criminal prosecution was dismissed on November 7, 2017. The injury here, the criminal prosecutions, which was related to a failure to obtain a CUP, is fairly considered one continuous act. *See Garcia*, 121 P.2d at 642. The Court sees no reason, and Defendants cite none, why Plaintiffs should be barred from bringing a claim when part of its discrete injury was inflicted within a year of filing this action. Therefore, the Court declines Defendants' request to invoke the disfavored defense. Plaintiffs timely brought the FERA claim, which the Court will now address on its merits.

**c.  Claim I: FERA**

As noted above, FERA provides a cause of action when a governmental entity substantially burdens a person's exercise of religion. A.R.S. § 41-1493.01(D). In addition,

FERA provides that "[g]overnment shall not impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution, regardless of a compelling governmental interest." A.R.S. § 41-1493.03(B). Defendants argue that at this summary judgment stage, not enough evidence shows "churches generally, and Mr. henry's [sic] church particularly, were not treated the same as other similar uses." (Doc. 91 at 9). Defendants also quietly suggest the Court employ some sort of compelling interest analysis by noting that city planners created the Ordinance's CUP requirement to avoid traffic issues. (*Id.* at 8).

The plain language of § 41-1493.03(B) does not concern itself with whether the government has a compelling reason for why it treats religious assemblies differently. Even if the "burden" of "traffic and parking" were a compelling interest, that point is irrelevant to this particular FERA analysis. (Doc. 91 at 9). The question is whether the Ordinance treated the Iglesia "on less than equal terms with a nonreligious assembly or institution, regardless of a compelling governmental interest." § 41-1493.03(B).

The undisputed evidence shows churches were treated on less than equal terms than nonreligious assemblies. Defendants argue that similar land uses with predictable traffic schedules, such as day cares and assembly halls, were also required to obtain CUPs. (Doc. 91 at 8). However, the Ordinance did not require nonprofit fraternal or social club organizations to apply for a CUP. (Doc. 112-2 at 6). Community recreation centers, likewise, did not need a CUP. (*Id.*) FERA does not say that land use regulations may treat religious assemblies and some nonreligious assemblies with similar traffic schedules on less than equal terms than other nonreligious assemblies. FERA says land use regulations may not treat a religious assembly "on less than equal terms with *a* nonreligious assembly . . . ." § 41-1493.03(B) (emphasis added). The Court finds the unamended Ordinance's CUP requirement treated the Iglesia on less than equal terms than nonreligious assemblies, such as fraternal organizations.[5]

---

[5] The Court's reading of *Uzuegbunam v. Preczewski*, counsels against finding that the City's amendment of the Ordinance moots this Claim. *See* 141 S.Ct. at 796. The specific injury here, as established by FERA, results from the requirement that the Iglesia obtain a CUP when other non-religious were not subject to the same requirement. Following

Because there is no genuine dispute of material facts, the Court will grant summary judgment on the FERA claim. The facts show that the Ordinance's CUP requirement violated § 41-1493.03. The Court will enter judgment for this Claim in Plaintiffs' favor.

### d. Claim II: Free Exercise of Religion

The First Amendment, applied to the States through the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. amend. I. If the object of a law is to infringe or restrict practices because of their religious motivation, the law is subject to strict scrutiny and must be justified by a compelling governmental interest that is advanced in the least restrictive way possible. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531, 538 (1993). However, "a law that is neutral and of general applicability need not be justified by a compelling government interest even if the law has the incidental effect of burdening a particular religious practice." *Id.* at 531.

Previously, Plaintiffs brought a "facial challenge" to the Ordinance, which the Court dismissed because no evidence demonstrated the Ordinance had been passed in order to restrict the free exercise of religion. (Doc. 55 at 7). In fact, when the City added the CUP process, the Ordinance became less restrictive than prior versions that simply prohibited churches on Main Street. (*Compare* Doc. 112-2 at 6, *with* Doc. 83-2 at 3). In its current form, Plaintiffs' Free Exercise Claim is an "as-applied" challenge to the Ordinance. (Doc. 47 at 6). "An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular . . . activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). Plaintiffs' claim requires showing: (1) that the Ordinance, and criminal citation for failure to comply, was only enforced against religious institutions, and (2) that the government has not shown a compelling interest in burdening religious conduct. *See Lukumi*, 508 U.S. 520, 531 (1993).

Defendants argue the Ordinance was evenly enforced on everybody, including Plaintiffs. (Doc. 91 at 9). The undisputed record shows that Ms. Juarez required all entities

*Uzuegbunam*, that past injury could be redressed by nominal damages despite the change in the Ordinance. *See id.*

that needed a CUP to get one. (Doc. 100-20 at 9). Plaintiffs offer no evidence contesting this, and they themselves conceded that "at least 11 individuals or entities" have also been required to obtain CUPs. (Doc. 83 at 5). Instead Plaintiffs argue summary judgment is inappropriate now because their Free Exercise Claim requires showing "(1) Somerton based its enforcement actions on [Mr. Henry's] refusal to comply with the CUP, and (2) Somerton did not have a compelling government interest in burdening [Mr. Henry's] religious conduct." (Doc. 112 at 13). But this phrasing misstates their claim's first element, which the Court had previously explicitly set forth. (Doc. 55 at 7).

The correct question is whether the Ordinance was only enforced against religious institutions. *See Lukumi*, 508 U.S. at 531. Plaintiffs have cited no evidence showing the Ordinance was not evenly enforced across several uses. In fact, they show the Ordinance was applied to both religious and secular uses. Therefore, the as-applied challenge to the Original Ordinance fails.

Because there is no dispute of material fact, the Court grants Defendants' request for summary judgment on Claim Two, and it will enter judgment in Defendants' favor.

### e. Claims III & IV: Malicious Prosecution

Defendants seek summary judgment on Plaintiffs' malicious prosecution claims. (Doc. 91 at 10). The FAC brings a federal claim of malicious prosecution under 42 U.S.C. § 1983 and a separate state claim for malicious prosecution. (Doc. 56 at ¶¶ 135–61). A § 1983 claim for malicious prosecution requires showing the same elements as a state law malicious prosecution claim. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004); *Usher v. City of Los Angeles*, 828 F.2d 556, 562 (9th Cir. 1987). In Arizona, the elements of "malicious prosecution are (1) a criminal prosecution, (2) that terminates in favor of plaintiff, (3) with defendants as prosecutors, (4) actuated by malice, (5) without probable cause, and (6) causing damages." *Slade v. City of Phoenix*, 541 P.2d 550, 552 (Ariz. 1975).

Defendants focus their argument on the fifth element, arguing that there was probable cause for the prosecution against Mr. Henry. (Doc. 91 at 11). Under Arizona

law, probable cause is "a reasonable ground of suspicion, supported by circumstances sufficient to warrant an ordinarily prudent man in believing the accused is guilty of the offense." *McClinton v. Rice*, 265 P.2d 425, 431 (Ariz. 1953). The very existence of probable cause "constitutes a complete and absolute defense or bar to an action for malicious prosecution." *Id.*; *see also Slade*, 541 P.2d at 553. Generally, whether probable cause exists is a question of law to be decided by the court, except when there is conflicting evidence. *Gonzales v. City of Phoenix*, 52 P.3d 184, 187 (Ariz. 2002). And if, based upon a review of undisputed facts, the Court determines a reasonable jury would find no lack of probable cause, summary judgment is appropriate. *Donahoe v. Arpaio*, 986 F. Supp. 2d 1091, 1104 (D. Ariz. 2013).

Defendants' point is this: Mr. Henry conducted services in his church without a CUP. (Doc. 91 at 12). Therefore, there is probable cause to prosecute him for operating the Iglesia without the CUP. (*Id.*) In response, Plaintiffs do not address the issue of probable cause. Instead, they argue the City improperly influenced the prosecution and withheld information. (Doc. 112 at 15). Exactly why the City's actions were improper, or why the withheld information was material, Plaintiffs do not say. But because there is plainly probable cause to prosecute the failure to obtain a CUP, Plaintiffs' point is moot. *See McClinton*, 265 P.2d at 431.

Plaintiffs also imply throughout their briefing that Mr. Henry never actually performed any work that required an electrical permit. (Doc. 112 at 4, 14–15). This contention was specifically addressed by the Registrar of Contractor's ALJ, albeit in dicta, who found that Mr. Henry was performing unpermitted work. (Doc. 89-10 at 7–8). Because the case was not decided on the merits, it cannot be said conclusively through collateral estoppel that the work was unpermitted. *See Paulo v. Holder*, 669 F.3d 911, 917 (9th Cir. 2011). However, the only support for Plaintiffs' position, that a permit was unwarranted, appears to be their own implied assertion that no unpermitted work was performed. On the other hand, Defendants assert in their Motion that Mr. Henry admitted in a deposition that he performed unpermitted work. (Doc. 91 at 6 (citing Doc. 91-4 at

41)).  Plaintiffs do not contest this assertion in their Response.  Therefore, the Court finds that there is no genuine dispute that Mr. Henry was performing unpermitted electrical work.  There was, therefore, probable cause to initiate proceedings against Mr. Henry for this unpermitted work.

There being no dispute of material fact that the legal actions against Mr. Henry were supported by probable cause, the malicious prosecution claims necessarily fail.  *See McClinton*, 265 P.2d at 431.  The Court finds that entry of summary judgment is proper, and it shall enter judgment for Claims Three and Four in Defendants' favor.

### f.  Claims VI & VII: Equal Protection

The final claims for which Defendants seek summary judgment allege equal protection violations under the United States and Arizona Constitutions.  (Doc. 91 at 14).  The Court will evaluate the claims together as "'for all practical purposes,' the equal protection analysis is the same" under both constitutions.  *Vangilder v. Ariz. Dept. of Revenue*, 459 P.3d 1189, 1199 (Ariz. Ct. App. 2020) (citing *Valley Nat'l Bank of Phx. v. Glover*, 159 P.2d 292 (Ariz. 1945)).

"The Equal Protection Clause . . . is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985).  It prohibits government from "impermissibly discriminating among persons based on religion."  *Washington v. Trump*, 847 F.3d 1151, 1167 (9th Cir. 2017).  Like their freedom of expression claim, Plaintiffs bring an "as-applied" equal protection claim.  (Doc. 55 at 12).  This as-applied claim "focuses . . . not on the form of the governmental action, . . . but rather upon its results."  *De La Cruz v. Tormey*, 582 F.2d 45, 50 (9th Cir. 1978).  It requires Plaintiff show "discriminatory effect and invidious discriminatory intent or purpose."  *Id.* at 51; *see also Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977).

Defendants argue Plaintiffs' claims of discrimination are "based on an unsupported narrative that Somerton employees were acting with discriminatory intent rather than enforcing the Building and Zoning Codes."  (Doc. 91 at 14).  This narrative, as Plaintiffs

argue, is that Mr. Henry's Iglesia would hamper the City's plans to open a nearby sports bar. (Doc. 112 at 7). They say, "Somerton officials informed at least one witness that they did not want a church . . . ." (Doc. 112 at 13). By saying "at least" Plaintiffs make it seem like there are more. But the one and only witness Plaintiffs cite is Mr. Arias, the Iglesia's landlord, who states in an affidavit that Ms. Juarez told him the City did not want another church because it wanted to open sports bar within 300 feet of where the Iglesia would be. (Doc. 112-3 at 81). Mr. Arias also avers that Ms. Juarez said they would use the CUP process to block the church. (*Id.* at 82). Plaintiffs also argue other circumstantial evidence shows the City's intent to discriminate against them. (Doc. 112 at 13).

Defendants argue against this narrative by noting, first, that a church would not have prevented a nearby sports bar from opening. (Doc. 100 at 3 (noting that sports bars and churches are not subject to the usual 300' separation requirement under A.R.S. § 4-207(A) and A.R.S. § 4-205.02)). Next, and "[m]ost importantly," Defendants argue, "Plaintiffs did not identify any individuals who were treated differently than Mr. Henry after refusing to obtain a CUP or electrical permits required by the Zoning Code." (Doc. 108 at 11). As noted before, the parties do not dispute that the City has approved CUPs for three other churches along Main Street among several other entities that also required CUPs under the unamended Ordinance. (Doc. 83-2 at 4).

The focus of an as-applied equal protection claim is the governmental action. *See De La Cruz*, 582 F.2d at 50. The resulting governmental action of Mr. Henry's refusal to apply for a CUP, which no party disputes, is that he was prosecuted for not applying for a CUP. Although Plaintiffs argue that the City's prosecution of Mr. Henry deviated "from its normal policies," they do not explain how Defendants deviated from the normal policies, nor do they cite to any evidence explaining what policy they deviated from. (Doc. 112 at 13–14). Even assuming the worst of intentions, there is no evidence of unequal application of the Ordinance. To the contrary, if the City had not required Mr. Henry to apply for a CUP, then it would have been treating him differently that those who had been required to obtain one. *See City of Cleburne*, 473 U.S. at 439. The Court finds no evidence that the

law has been applied unequally.

Therefore, there being no dispute of material facts on the Ordinance's application, the Court will grant Defendants' Motion and enter Judgment in their favor for the Sixth and Seventh Equal Protection Claims.

### g. Punitive Damages

Finally, Defendant seeks summary judgment on the issue of whether Plaintiffs may obtain punitive damages. (Doc. 91 at 17). The only claim Plaintiffs prevail on is their FERA claim against the City, for which they may "obtain appropriate relief," including attorney fees and costs. A.R.S. § 41-1493.01(D). Defendants note that under Arizona law, public entities are not liable for punitive damages when acting within the scope of their employment. (Doc. 91 at 17 (citing A.R.S. § 12-820.04)). Plaintiffs do not address this statute in their Response. (Doc. 112 at 16–17). The Court finds that by issuing and enforcing the Ordinance, the City was acting within the scope of its duties. Therefore, whatever appropriate relief is awarded shall not include punitive damages.

## V. Conclusion

The Court has dismissed each Defendant, except for the City. It has granted summary judgment on every claim, and Plaintiffs only prevail on their FERA claim. All that remains is to determine under FERA what constitutes appropriate relief, how much and why.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 83) is **denied**. Plaintiffs' Fifth Claim shall be dismissed with prejudice for lack of standing.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment (Doc. 91) is **granted** in part and **denied** in part as set forth in this Order. Defendants Ms. Juarez and Mr. Lopez shall be dismissed from this action, along with their spouses, with prejudice.

**IT IS FURTHER ORDERED** that pursuant to Federal Rule of Civil Procedure 54(b), judgment shall be entered in favor of Plaintiffs for the First Claim under the Free

Exercise of Religion Act. Judgment shall be entered in favor of Defendants for the Second, Third, Fourth, Sixth, and Seventh Claims. As stated in the Order, all that remains to be decided in this action is Plaintiffs' claim for relief. The Clerk of Court shall kindly enter judgment accordingly.

**IT IS FINALLY ORDERED** that Plaintiffs shall file a motion for damages within thirty (30) days of this Order's entry. The motion must set forth what constitutes "appropriate relief" for the City's violation of the Free Exercise of Religion Act. *See* A.R.S. § 41-1493.01. Any claims for damages must be accompanied with evidentiary support. The motion must also request attorney fees and costs in accordance with LRCiv 54.2.

Dated this 17th day of June, 2021.

Honorable Diane J. Humetewa
United States District Judge